**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WALEED ABDUL-QAWIY,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL RAILROAD PASSENGER CORP., et al.,<br><br>    Defendants. | Civil Action 04-01030<br>(HHK) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Waleed Abdul-Qawiy ("Abdul-Qawiy"), brings this action against defendants, National Railroad Passenger Corporation ("Amtrak"), United Transportation Union ("UTU"), and United Transportation Union Local 1933 ("Local 1933"), alleging that Amtrak illegally terminated his employment based solely upon alleged work-related injuries and that this termination violated the terms of a collective bargaining agreement, the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, the Federal Employer's Liability Act, 45 U.S.C. §§ 51, *et seq.*, the public policy of the District of Columbia, and various constitutional provisions.  Presently before the court is Amtrak's motion to dismiss Counts Two, Three, and Four of Abdul-Qawiy's complaint [#5].  Amtrak argues that these counts are preempted by the exclusive arbitral provisions of the Railway Labor Act, or, in the alternative, that Counts Three and Four fail to state a claim upon which relief may be granted.  Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion should be granted in part and denied in part.

## I. BACKGROUND INFORMATION

The facts and allegations of this case pertinent to the motion before the court are as follows. Defendant Amtrak is a common carrier subject to the provisions of the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* On or about July 3, 2002, Amtrak hired Abdul-Qawiy as an Assistant Passenger Conductor. The terms and conditions of Abdul-Qawiy's position were governed by a collective bargaining agreement between Amtrak and UTU.[1] Under the agreement, new conductors are subject to a ninety-day probationary period. If the employee does not meet with disapproval during the probationary period, his application is considered approved. Additionally, the agreement requires that no employee shall be dismissed without a fair and impartial hearing.

On July 8, 2002, Abdul-Qawiy began an eight-week training course for new employees, which was successfully completed on or about September 3, 2002. Abdul-Qawiy alleges that his employment began, for purposes of the collective bargaining agreement, on July 8, 2002 when he reported to his first day of training. Therefore, according to Abdul-Qawiy, the 90-day probationary period under the collective bargaining agreement ended, and Abdul-Qawiy became a permanent employee, on October 6, 2002. Defendants, however, assert that Abdul-Qawiy's employment did not begin until *after* the training course was completed on September 3, 2002, and therefore Abdul-Qawiy never became a permanent employee.

Abdul-Qawiy alleges that he became a member of Local 1933 on or about October 1, 2002, that Amtrak deducted union dues from his paycheck and forwarded the payments to Local

---

[1] On or about January 19, 1986, Amtrak and UTU entered into the collective bargaining agreement. Local 1933, through its association with UTU, is a party to that collective bargaining agreement.

1933, and that he is still a current union member in good standing. UTU and Local 1933 deny that Abdul-Qawiy is currently a member of the union, averring that all union dues were mistakenly deducted from Abdul-Qawiy's paycheck and have since been refunded.

On or about October 7, 2002, Abdul-Qawiy injured his arm while lifting passengers' luggage. He claims that he was not provided with proper lifting equipment and that he was instructed to lift luggage that was too heavy to be lifted safely. Abdul-Qawiy also claims that he was required to open and close train doors, some of which were defective and therefore difficult to open. After Abdul-Qawiy reported his injury to his supervisor, he was instructed to go to the hospital. Amtrak paid for Abdul-Qawiy's hospital visit. The following day, the chairman of Local 1933, Ray Cunningham, informed Abdul-Qawiy that he was terminated without reason because Amtrak had decided not to make him a permanent employee. Abdul-Qawiy petitioned his union representative to intercede with Amtrak on his behalf. Local 1933, however, agreed with Amtrak that Abdul-Qawiy was still a probationary employee and was therefore entitled to neither a hearing nor union representation.

Abdul-Qawiy alleges that he hired an attorney to persuade Amtrak and the union to give him a hearing, as he claims is required under the collective bargaining agreement. Abdul-Qawiy further alleges that he repeatedly attempted to contact both Amtrak and the union from late 2002 until June 2003, but that neither was responsive. On June 22, 2004, Abdul-Qawiy initiated the present action alleging that: (1) Amtrak breached the Federal Employer's Liability Act; (2) Amtrak breached the collective bargaining agreement; (3) Amtrak wrongfully discharged Abdul-Qawiy in violation of the common law and statutes of the District of Columbia; (4) Amtrak

violated Abdul-Qawiy's constitutionally protected property interests; (5) UTU and Local 1933 breached their duty of fair representation; and (6) UTU and Local 1933 breached their contractual relationship with Abdul-Qawiy.

## II. ANALYSIS

In moving to dismiss Counts Two, Three, and Four of Abdul-Qawiy's complaint, Amtrak essentially makes two arguments. First, it argues that these counts are preempted by the Railway Labor Act, 45 U.S.C. §§ 151 *et seq*. Second, Amtrak contends that Counts Four and Five fail to state a claim upon which relief can be granted.

**A. Federal Preemption**

**1. Legal Standard**

While Amtrak grounds its motion on Fed. R. Civ. P. 12(b)(6) motion, its preemption argument actually challenges this court's subject matter jurisdiction with respect to some of Abdul-Qawiy's claims. A motion to dismiss for lack of subject matter jurisdiction, which is properly considered under Fed. R. Civ. P. 12(b)(1), should not be granted "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994); *Beverly Enters., Inc. v Herman*, 50 F. Supp. 2d 7, 11 (D.D.C. 1999). Additionally, at the dismissal stage, the plaintiff's complaint must be construed liberally, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the alleged facts. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## 2. Plaintiff's Preemption Argument

In enacting the Railway Labor Act, Congress sought to promote stability in labor-management relations by "providing a comprehensive framework for the resolution of labor disputes in the railroad industry." *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987). To do so, the Act provides for mandatory grievance procedures to resolve certain labor disputes, commonly referred to as "minor disputes." "Minor" disputes stem from the interpretation or application of an existing collective bargaining agreement and are distinguished from "major" disputes, which arise from the formation or change of a collective bargaining agreement. *Consolidated Rail Corp. v. Ry. Labor Executives Ass'n*, 491 U.S. 299, 302–07 (1989). When a minor dispute arises, labor and management must submit to binding arbitration before the National Railroad Adjustment Board (or an adjustment board established by the parties). 45 U.S.C. § 153 First (i). The jurisdiction of the Adjustment Board over minor disputes is exclusive, subject to limited judicial review. *Consolidated Rail*, 491 U.S. at 304.

Not all claims arising out of an employment-related dispute are preempted by the Act, however. Rather, only those state-law claims that require an interpretation of the collective bargaining agreement itself are preempted. In discussing the scope of federal preemption under an analogous statute, the Supreme Court has held that "if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted" and "the interpretation of collective-bargaining agreements remains firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399,

407, 411 (1998).[2] That said, whenever the "state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement" for preemption purposes. *Id*. at 410; *see also Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 256 (1994) (holding that the Railway Labor Act's "mechanism for resolving minor disputes does not pre-empt causes of action to enforce rights that are independent of the [collective bargaining agreement]").

Amtrak argues that Abdul-Qawiy's "breach of contract, wrongful discharge and property interest claims all allege that Amtrak interfered with his rights under the [collective bargaining agreement] by failing to provide him with certain procedural rights required under [the rules of that agreement]." Def.'s Mot. at 9. Because these claims therefore "require[] analysis of the [collective bargaining agreement] and employee's rights under it," Amtrak contends they are preempted by the Railway Labor Act. *Id.* In opposition, Abdul-Qawiy argues that neither his wrongful discharge nor his property interest claim is preempted. Abdul-Qawiy further argues that, even if his claims are preempted, he was nonetheless not required to grieve his termination under one of the recognized exceptions to the Railway Labor Act's mandatory arbitration provisions. The court will now analyze whether each of Abdul-Qawiy's claims are preempted by the Railway Labor Act.

    a.  Breach of Contract Claim

Count Two of Abdul-Qawiy's complaint is a state-law breach of contract claim against Amtrak. The contract allegedly breached is the collective bargaining agreement, which,

---

    [2] *Lingle* involved the preemptive scope of § 301 of the Labor Relations Management Act, 29 U.S.C. § 185. The Supreme Court later explicitly held that the standard adopted in *Lingle* also "provides an appropriate framework for addressing pre-emption under the RLA, and we adopt the *Lingle* standard to resolve claims of RLA pre-emption." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 263 (1994).

according to Abdul-Qawiy, created "a contractual duty" for Amtrak "to terminate plaintiff only for cause and only after a fair and impartial hearing." Compl. ¶¶ 28–30. A determination of this claim will necessarily require this court to reference and interpret the collective bargaining agreement itself. Accordingly, Abdul-Qawiy's breach of contract claim is a "minor dispute" preempted by the Railway Labor Act and subject to its arbitration procedures.[3]

That Abdul-Qawiy's breach of contract claim is a minor dispute, subject to the arbitration provisions of the Railway Labor Act, does not necessarily preclude this court from entertaining jurisdiction over it. Abdul-Qawiy contends that four exceptions to the general rule that a federal court cannot entertain jurisdiction over preempted claims apply to his contract claim against Amtrak. These exceptions apply: (1) when the employer repudiates the private grievance machinery, *Vaca v. Stipes*, 386 U.S. 171, 185 (1967); (2) when resort to administrative remedies would be futile, *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330 (1969); (3) when the employer is joined in a duty of fair representation claim against the union, *Richins v. Southern Pacific Co.*, 620 F.2d 761, 762 (10th Cir. 1980); and (4) when, because of a breach of the duty of fair representation by the union, the employee loses the right to grieve before the Arbitration Board, *Childs v. Pa. Fed'n Bhd. of Maint. Way Employees*, 831 F.2d 429 (3d Cir. 1987). *See also Sisco v. Consolidated Rail Co.*, 732 F.2d 1188, 1190 (3d Cir. 1984) (citations omitted) (summarizing exceptions); *Martin v. American Airlines, Inc.*, 390 F.3d 601, 608–10

---

[3] Abdul-Qawiy never disputes that this claim is preempted in his Opposition.

(8th Cir. 2004) (same). None of the exceptions apply in Abdul-Qawiy's case, and therefore jurisdiction over his contractual claim against Amtrak is lacking.[4]

The first exception—repudiation of the grievance procedure by the employer—does not apply because Abdul-Qawiy never alleged that he exercised his statutory right, under 45 U.S.C. First (j), to petition the Adjustment Board directly without the aid of the union. While he claims that both the union and the railroad were unresponsive to his requests for a due process hearing, Compl. ¶¶ 18–19, and that the union refused to assist him with filing a complaint, *id.* ¶ 20, Abdul-Qawiy never alleges that he actually filed a grievance with the Board on his own behalf. Because Abdul-Qawiy had the right under the Railway Labor Act to do so and opted not to, the court cannot conclude that any failure of the grievance machinery was the result of Amtrak's actions. *See Childs*, 831 F.2d at 438 (holding that failure of an employee to petition the Adjustment Board directly negates any allegation that the grievance procedure was repudiated by the employer).

Abdul-Qawiy argues that the second exception applies because it would have been futile for him to instigate the grievance procedures directly. This is so, he argues, because if he sought arbitration without the support of the union, "he risked the union's ire and the loss of his champion." Pl.'s Opp'n at 5. This allegation, however, does not support the conclusion that seeking arbitration would have been futile. Any allegation that the union would be upset by Abdul-Qawiy's use of his statutory right to press his claims directly, even if true, falls short of

---

[4] It appears that the D.C. Circuit has never explicitly recognized all of these four exceptions. The court will assume *arguendo* that they are valid exceptions and proceed to determine whether any apply to Abdul-Qawiy's case. Because the court ultimately concludes that none are applicable, the court need not address whether these exceptions should be recognized in this jurisdiction.

establishing that the Arbitration Board would therefore have refused to provide the relief that Abdul-Qawiy seeks. Absent such an allegation, the court cannot conclude that arbitration would have been futile.

With respect to the third exception, courts have noted that "an employer may be joined in a duty of fair representation action against the union if facts are alleged tying the employer to the events complained of." *Sisco*, 732 F.2d at 1190; *see also Raus v. Bhd. Ry. Carmen*, 663 F.2d 791, 798 (8th Cir. 1981) (holding that collusion or some similar nexus between the union and the employer must be present to invoke this exception). Although Abdul-Qawiy's complaint suggests that the union "colluded" with Amtrak to accomplish his discharge, Compl. ¶ 34, he fails to allege any facts to support this charge. Such a conclusory statement, wholly unsupported by factual allegations in the complaint, is insufficient to connect Amtrak to the union's alleged breach of its duty of fair representation. *Kowal*, 16 F.3d at 1276 ("[T]he court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint."). Abdul-Qawiy, therefore, fails to meet the necessary requirements to invoke jurisdiction by way of this exception.

A fourth, and final, exception exists when a duty of fair representation claim is brought against a union and the employee claims that he lost his right to press his grievance before the Adjustment Board because of this breach. In such a case, a court is permitted to entertain jurisdiction over the contract claims, despite the fact that they would normally be arbitrated. *See, e.g.*, *Childs*, 831 F.2d at 438–441 (3d Cir. 1987); *Kaschak v. Consolidated Rail Corp.*, 707 F.2d 902, 905–910 (6th Cir. 1983); *Schum v. South Buffalo Ry. Co.*, 496 F.2d 328, 330–32 (2d Cir.

1974).[5] In order to invoke this exception, there is a "heavy burden" on the plaintiff to show "that the union's breach of its duty of fair representation precluded his recovery from the railroad, and that his reliance on the union was reasonable." *Childs*, 831 F.2d at 441; *Kaschak*, 707 F.2d at 913. Abdul-Qawiy's complaint fails to meet this "heavy burden"; he never alleges that he lost any rights he had because of the union's alleged breach nor that any recovery was precluded as a result. All he alleges is that the union failed to file a complaint on his behalf and therefore "permitted the time for demanding a claim to lapse." Compl. ¶ 42. However, Abdul-Qawiy acknowledges that the union informed him of their refusal to file a claim. *Id.* Consequently, the court cannot conclude that Abdul-Qawiy's reliance on the union to file his grievance was reasonable, particularly given the fact that the RLA explicitly allows an employee to begin the grievance process directly without aid of the union.

In sum, Abdul-Qawiy's complaint fails to establish that any of the exceptions to Railway Labor Act preemption apply in this case. Absent a showing that an exception applies, resolution of Abdul-Qawiy breach of contract claim lies within the jurisdiction of the Adjustment Board. Accordingly, dismissal of this claim is appropriate.

### b. Wrongful Discharge Claim

Count Three alleges that Amtrak's decision to terminate Abdul-Qawiy was wrongful because it was based solely on his "work related injuries in violation of the laws of the District of

---

[5] This exception is based upon the belief that the central policy of the RLA preemption scheme—"affording railway laborers a fair and efficient means of redressing their grievances," *Childs*, 831 F.2d at 440—outweighs the RLA's policies of "avoiding unnecessary judicial intervention and allowing the arbitration system full play." *Id.* As the Third Circuit noted in *Childs,* "where the union effectively eliminates [arbitration as an option] and frustrates the federal administrative remedy, fairness to the employee and fidelity to the underlying goals of the RLA mandate that we grant the employee a forum in federal court." *Id.* at 441.

Columbia and against public policy." *Id.* ¶ 32. Amtrak argues that a state-law claim for wrongful termination is preempted under the Railway Labor Act, citing *Andrews v. Louisville & Nashville Ry Co.*, 406 U.S. 320 (1972). In *Andrews*, the Supreme Court began by noting that wrongful discharge claims, to be valid, must rely upon "some sort of statutory or contractual standard that modifies the traditional common-law rule that a contract of employment is terminable by either party at will." *Id.* at 324. Because, in *Andrews*, the "only source for petitioner's right not to be discharged [was] the collective-bargaining agreement," the Court concluded that the claim was preempted by the Railway Labor Act. *Id. Andrews* is distinguishable from the case here. Here, unlike in *Andrews*, Abdul-Qawiy does not rely upon the collective bargaining agreement for his right not to be discharged. Rather, he cites "the laws of the District of Columbia" and "public policy" as the source of such a right. Compl. ¶ 32. Because Abdul-Qawiy does not rely upon the bargaining agreement, the wrongful discharge claim is independent of that agreement and is therefore not preempted. *See Lingle*, 486 U.S. at 410.

        c.  Due Process Claim

Finally, Count Four of Abdul-Qawiy's complaint alleges that Amtrak violated Abdul-Qawiy's constitutional rights and property interest in his employment at Amtrak. Compl. ¶¶ 36–37. Abdul-Qawiy looks to the Fifth and Fourteenth Amendments to the U.S. Constitution to support this allegation. *Id.* As above, Amtrak argues that the Railway Labor Act preempts these constitutional claims. The court disagrees.

In a similar case, the Supreme Court held that the Railway Labor Act's binding arbitration provisions did not deprive a district court of the jurisdiction to hear an employee's claim for personal injuries arising under the Federal Employers' Liability Act. *Buell*, 480 U.S. at 564–65. In so holding, the Supreme Court noted that the Railway Labor Act did not preempt other federal statutes that provide rights outside the scope of those covered by the Act. *Id.* at 565 ("[N]otwithstanding the strong policies encouraging arbitration, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.") (internal quotations and citations omitted). Given that the Supreme Court has determined that relief under federal statutes distinct from the Railway Labor Act is not preempted by that Act, the court finds it difficult to perceive why constitutional claims should be treated differently. *See Coppinger v. Metro-North Commuter R.R.*, 861 F.2d 33, 37 (2d Cir. 1988) ("[W]e are persuaded that there is no principled basis upon which to distinguish [the plaintiff's constitutional claims] from the FELA issue in *Buell*."). This is particularly so given the Supreme Court's holding that, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster v. Doe*, 486 U.S. 592, 603 (1988) (citing *Johnson v. Robison*, 415 U.S. 361 (1974)). Congress did not evidence such a purpose in the Railway Labor Act. *Coppinger*, 861 F.2d at 37. In light of these precedents, the court is compelled to conclude that Abdul-Qawiy's constitutional claim remains properly in federal court.

**B.  Dismissal for Failure to State a Claim**

Amtrak also moves for dismissal under Fed. R. Civ. P. 12(b)(6) contending that both Counts Three and Four fail to state a claim upon which relief may be granted. Under 12(b)(6),

dismissal is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (internal quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In addition, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged"). In evaluating a motion to dismiss, the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624, and matters of public record, *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs or memoranda of law may not be considered when deciding a motion to dismiss, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy,* 29 F.3d 682, 688 (D.C. Cir. 1994).

**1. Wrongful Discharge**

Abdul-Qawiy alleges that he was wrongfully discharged from employment with Amtrak because his termination was based solely on an alleged work-related injury. In support of this claim, Abdul-Qawiy asserts that his termination violated "the statutes and the common law of the

District of Columbia" and was against public policy. Compl. at ¶ 35.[6] Amtrak contends that Abdul-Qawiy's complaint is "devoid of any allegation sufficient to meet the requirements of a public policy exception to the at-will doctrine" that governs employment relationships in the District of Columbia. Def.'s Mot. at 11. In light of this purported failure, Amtrak urges the court to dismiss Abdul-Qawiy's wrongful discharge claim.

District of Columbia law has long recognized the at-will employment doctrine, which states that "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co.*, 597 A.2d 28, 30 (D.C. 1991). In *Adams*, however, the D.C. Court of Appeals recognized an intentional tort for wrongful discharge, holding that "there is a very narrow exception to the at-will doctrine under which a discharged at-will employee may sue his or her former employer for wrongful discharge when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." 597 A.2d at 34. The court later clarified, in *Carl v. Children's Hosp.*, 702 A.2d 159, 160 (D.C. 1997) (en banc), that the "'very narrow exception' created in *Adams* should not be read in a manner that makes it impossible to recognize any additional public policy

---

[6] Abdul-Qawiy does not allege, for purposes of his wrongful termination claim, that he was a tenured employee and the termination therefore violated the terms of the collective bargaining agreement. Rather, Abdul-Qawiy alleges that his termination was wrongful solely because it violated the public policy of the District of Columbia. Failing to allege that his employment was protected under the collective bargaining agreement, the court concludes that Abdul-Qawiy's wrongful discharge claim does not suggest that he was anything other than an at-will employee. Had Abdul-Qawiy claimed that he was not an at-will employee in his wrongful discharge claim, that claim would have been preempted by the Railway Labor Act under the principles espoused in *Andrew*, 406 U.S. at 324.
   While the allegations in Abdul-Qawiy's wrongful discharge claim seem to contradict the allegations in his other claims that he was a tenured employee, such alternative pleading is acceptable under Rule 8(e)(2) of the Federal Rules of Civil Procedure.

exceptions to the at-will doctrine that may warrant recognition." Under *Carl* and subsequent case law, requests to recognize additional public policy exceptions to the at-will employment doctrine should be addressed on a case-by case basis pursuant to the following instructions:

> The court should consider seriously only those arguments that reflect a clear mandate of public policy—i.e., those that make a clear showing, based on some identifiable policy that has been "officially declared" in a statute or municipal regulation, or in the Constitution, that a new exception is needed. Furthermore, there must be a close fit between the policy thus declared and the conduct at issue in the allegedly wrongful termination.

*Id*. at 164 (Terry, J., concurring) (footnotes omitted); *accord Liberatore v. Melville Corp.*, 168 F.3d 1326, 1331 (D.C. Cir. 1999) (stating that "the effective holding of the en banc court" in *Carl* was that circumstances other than an employee's outright refusal to violate a law can constitute grounds for a public policy exception if "solidly based on a statute or regulation that reflects the particular public policy to be applied").

Here, Abdul-Qawiy argues that the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, *et seq.*, evinces a public policy against terminating an employee solely because that employee is injured during the course of his employment. This federal statute, he argues, provides the firm footing upon which a new exception to the at-will doctrine should be based. The court cannot agree.

Congress passed FELA in 1908 to assure railroad employees a safe workplace and to provide the right to recover compensation if injured in a railroad related accident. The purpose of FELA, is not, as Abdul-Qawiy suggests, to protect injured employees from being terminated. Rather, as the First Circuit has stated, the "obvious purpose" of FELA is to "is to enlarge the remedy of railroad employees injured as a result of hazards incident to their work." *Metropolitan*

*Coal Co. v. Johnson*, 265 F.2d 173, 178 (1st Cir. 1959). In fact, there is no provision in FELA that makes it unlawful for a railroad to terminate an employee because that employee was injured while on the job.[7] Nor are the purposes of FELA impeded by the fact that an employee is terminated; a terminated employee is still free to seek compensation for his injuries under FELA. As such, FELA cannot be deemed to "clearly reflect" a policy against terminating injured employees. Abdul-Qawiy reliance on FELA is therefore misplaced and his attempts to have this court recognize a new exception to the at-will employment doctrine must be rejected. Having failed in this task, his wrongful termination claim must be dismissed for failure to state a claim upon which relief may be granted.

**2. Due Process Claim**

In Count Four, Abdul-Qawiy claims that he has a property interest in continued employment with Amtrak, which was deprived when "Amtrak terminated [him] and then conspired with UTU and Local 1933 to deny him his appeal rights." Compl. ¶ 37.[8] In response, Amtrak argues that this count fails to state a claim upon which relief may be granted, primarily because Abdul-Qawiy was allegedly an untenured employee who lacked a property interest in his continued employment.

---

[7] The FELA does make it criminally sanctionable for a railroad to discharge or discipline an employee who "furnishes voluntarily" information relating to a work-place accident. 45 U.S.C. § 60. This section is meant to "enable injured employee to readily obtain all available information from witnesses, particularly employees of carrier." *Dugger v. Baltimore & O.R. Co.*, 5 F.R.D. 334 (D.C.N.Y. 1946). It does not, however, protect an employee who suffers a work-place injury from adverse employment actions.

[8] As Abdul-Qawiy correctly notes in his complaint, Amtrak is considered a government entity for constitutional purposes and its actions are subject to the constraints of the Constitution. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995).

Abdul-Qawiy's constitutional due process claim turns on whether he had a property interest in continued employment. *Bd. of Regents v. Roth*, 408 U.S. 564, 576–78 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). If he did, then Amtrak could not deprive him of this interest without due process of law. *Loudermill*, 470 U.S. at 538. To determine whether Abdul-Qawiy had a property interest in continued employment, the court must ask whether "he had a legitimate expectation based on . . . understandings (contract, express or implied), that he would continue in his job." *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988).

Abdul-Qawiy alleges in his complaint that, under the collective bargaining agreement, a railroad employee becomes a permanent employee of the railroad ninety days after he begins work, Compl. ¶ 9, and that permanent employees may not be terminated without a fair and impartial hearing, *id.* ¶ 10. He further alleges that he began work on July 8, 2002. *Id.* ¶ 11. Therefore, according to Abdul-Qawiy, he became a permanent employee on October 6, 2002, and, at that point, was subject to procedural protections under the collective bargaining agreement. *Id.* ¶ 13. It is a reasonable inference from these allegations—which the court must accept as true—that Abdul-Qawiy had a legitimate expectation that he would continue in his job as of October 8, 2002, the date that he was terminated.. The court, therefore, finds that Abdul-Qawiy has pled his due process claim sufficiently to survive a 12(b)(6) motion and, accordingly, denies Amtrak's motion in that respect.

**CONCLUSION**

Accordingly, it is this 25th day of October, 2005, hereby

**ORDERED**, that Amtrak's motion to dismiss is **GRANTED** with respect to Count Two (Breach of Contract) and Count Three (Wrongful Discharge) of Abdul-Qawiy's complaint and **DENIED** with respect to Count Four (Due Process).

                                            Henry H. Kennedy, Jr.
                                            United States District Judge